FILED
2021 Oct-22  AM 09:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

CLAYBORN DEE REAVES,          )
                             )
             Plaintiff,       )
                             )
      vs.                     )        Case No. 3:19-cv-00793-HNJ
                             )
LUSTER ECHOLS, and            )
KERRY UNDERWOOD,              )
                             )
             Defendants.      )

## MEMORANDUM OPINION AND ORDER

This action proceeds before the court on the parties' cross-motions for summary judgment. (Doc. 57, 61). Plaintiff Clayborn Reaves, proceeding *pro se*, lodges two claims pursuant to 42 U.S.C. § 1983, in essence maintaining that Defendant Luster Echols discriminated against him as a "class of one" in violation of the Equal Protection Clause of the Fourteenth Amendment, and that Defendant Kerry Underwood sustains supervisory liability for failing to redress Echols's unconstitutional conduct.[1] (*See* doc. 1). Defendants Echols and Underwood also filed two motions to strike, arguing that Plaintiff Clayborn Reaves presented evidence in violation of the Federal Rules of Civil

---

[1] Reaves's Complaint does not contain formal counts designating his "class of one" or supervisory liability claim. (*See* doc. 1). However, as elaborated in the Court's Memorandum Opinion and Order in response to Underwood's Motion to Dismiss, the allegations in the Complaint nevertheless articulate a "class of one" and supervisory liability claim pursuant to the standards prescribed in Federal Rule of Civil Procedure 8(a). (Doc. 35).

Procedure and filed a second response to Defendants' Motion for Summary Judgment without the court's permission.  (Doc. 63, 67).

As the analyses contained herein will portray, Defendants' motion to strike evidence argues that Reaves presented inadmissible evidence of a purported witness's handwritten statement.  The alleged declarant did not notarize or subscribe the statement as true under penalty of perjury.  Nevertheless, the challenged statement does not bear upon the court's summary judgment assessments.  The court finds Defendants' argument to strike the statement as moot.

In the motion to strike Reaves's additional summary judgment filing, Defendants argue Reaves filed a second response to their Motion for Summary Judgment without the court's permission.  The court liberally construes Reaves's *pro se* filing as a Reply in Support of Plaintiff's Motion for Summary Judgment and will not strike the reply from the record.

Regarding the summary judgment motions, Reaves challenges Echols's enforcement of city ordinances against his residential property and Underwood's supervision of Echols.  Based upon the record, the court finds no genuine issues of material fact as to Echols's conduct under the Equal Protection Clause or Underwood's supervisory liability, and no reasonable jury can return a verdict in Reaves's favor on his claims.

Therefore, based upon the following discussion, the court **DENIES** Defendants' Motion to Strike (Doc. 63) as **MOOT** and **DENIES** Defendants' other

Motion to Strike (Doc. 67) as well.  In addition, the court **GRANTS** Defendants'
Motion for Summary Judgment and **DENIES** Reaves's Motion for Summary
Judgment.

### STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant
summary judgment if the movant shows that there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. Rule 56(a).  The party seeking summary judgment bears the initial responsibility of
informing the district court of the basis for its motion, and identifying those portions
of the pleadings, depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, which it believes demonstrate the absence of a
genuine issue of material fact.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.
1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

If the movant sustains its burden, a non-moving party demonstrates a genuine
issue of material fact by producing evidence by which a reasonable fact-finder could
return a verdict in its favor.  *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263
(11th Cir. 2007) (citation omitted).  The non-movant sustains this burden by
demonstrating "that the record in fact contains supporting evidence, sufficient to
withstand a directed verdict motion." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116
(11th Cir. 1993).  In the alternative, the non-movant may "come forward with additional
evidence sufficient to withstand a directed verdict motion at trial based on the alleged

evidentiary deficiency." *Id.* at 1116-17; *see also Doe v Drummond Co.*, 782 F.3d 576, 603–04 (11th Cir. 2015), *cert. denied*, 136 S. Ct. 1168 (2016).

The "court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000) (citations omitted). "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 151 (citation omitted). "That is, the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Id.* (citation omitted).

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. In addition, a movant may prevail

4

on summary judgment by submitting evidence "*negating* [an] opponent's claim," that is, by producing materials disproving an essential element of a non-movant's claim or defense. *Id.* at 323 (emphasis in original).

There exists no issue for trial unless the nonmoving party submits evidence sufficient to merit a jury verdict in its favor; if the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249. That is, the movant merits summary judgment if the governing law on the claims or defenses commands one reasonable conclusion, but the court should deny summary judgment if reasonable jurors could "differ as to the import of the evidence." *Id.* at 250.

When parties file cross-motions for summary judgment, the standard of review "does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed." *GEBAM, Inc. v. Inv. Realty Series I, LLC*, 15 F. Supp. 3d 1311, 1315–16 (N.D. Ga. 2013) (citing *Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). "The [c]ourt must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration." *Id.* (internal citations omitted); *see also United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) ("Cross-motions for summary judgment will not, in themselves, warrant the court granting summary judgment unless one of the

parties is entitled to judgment as a matter of law on facts that are not genuinely disputed.").

## MOTIONS TO STRIKE

Defendants filed two motions to strike. (Doc. 63, 67). The first Motion to Strike aims to strike a purported witness's handwritten statement attached to Reaves's Motion for Summary Judgment. (Doc. 63). Reaves attempts to use the statement as an affidavit in support of his motion. However, the statement fails to comply with the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. Rule 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). This court in a previous order placed Reaves on notice that "[a]ffidavits must either be notarized or be subscribed as true under penalty of perjury." (Doc. 58 at 3 (citing *Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985)). The declarant of the statement did not notarize or subscribe the statement as true under penalty of perjury. Nevertheless, the challenged statement does not bear upon the court's summary judgment assessments. Thus, the court denies Defendants' Motion to Strike that statement as moot.

The second Motion to Strike aims to exclude Reaves's Reply in Support of Plaintiff's Motion for Summary Judgment. (Doc. 67). After Defendants filed a motion for summary judgment, Reaves filed a cross-motion for summary judgment (within the dispositive motion deadline set by the court) that the court also construed as a response to Defendants' summary judgment motions. Defendants argue that Reaves's

subsequent filing thereafter impermissibly constitutes a second response or sur-reply to Defendants' Motion for Summary Judgment without the court's permission.

"A document filed *pro se* is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estell v. Gamble*, 429 U.S. 97, 106 (1976)). Interpreting Reaves's document liberally, the court finds that Reaves filed a Reply in Support of his Motion for Summary Judgment rather than a second response to Defendants' Motion for Summary Judgment. Thus, the court will not strike Reaves's reply from the record.

## BACKGROUND

The court sets forth the following facts for the summary judgment determinations, drawn from the evidence taken in the light most favorable to the non-moving party on each motion.[2]

At all relevant times, Reaves resided in the City of Tuscumbia, Alabama, Underwood served as the Mayor of Tuscumbia, and Echols served as the Building Inspector for Tuscumbia. (*See* doc. 57-2, 57-3, 57-20). Echols's duties include inspection and enforcement of Tuscumbia's ordinances that pertain to real property located within city limits. (Doc. 57-3). Specifically, Echols issues citations to property owners violating applicable city ordinances. (*Id.*)

---

[2] Reaves failed to offer any admissible evidence to support the statements in his Motion for Summary Judgment and Reply in Support of Plaintiff's Motion for Summary Judgment. The court liberally construes that Reaves would make these statements under oath and penalty of perjury. Thus, the court considers the statements admissible.

Beginning in 2014, Echols issued Reaves ten citations consisting of: two abandoned vehicle citations, three trash and debris citations, one overgrown grass and vegetation citation, two International Property Maintenance Code citations, one animal citation, and one condemnation notice. (Doc. 57-3–13). Echols also received verbal complaints from other Tuscumbia residents concerning Reaves's property. (Doc. 57-3, 57-19). One written complaint in the record about Reaves's property discusses the neighborhood's concern for children's safety, residents' health and well-being, foul smells, and adverse effects on property values. (Doc. 57-19).

After Echols issued these citations, Reaves met with Underwood to discuss Echols's actions, and Underwood stated he would investigate Reaves's grievances. (Doc. 57-20). Following the meeting, Underwood checked the legitimacy of Reaves's claims, and the basis for which Echols issued the citations, by driving past Reaves's property to observe its condition. (*Id.*) Underwood concluded Reaves's property did not meet ordinance standards and Echols rightfully issued the citations in furtherance of the safety and welfare of Tuscumbia's citizens. (*Id.*)

As recounted previously, Reaves, proceeding *pro se*, filed his complaint pursuant to § 1983 claiming a "class of one" equal protection violation and supervisory liability. (*See* Doc. 1). Reaves submitted photographs purportedly depicting neighboring residential properties in violation of Tuscumbia's ordinances. (Doc. 1, 66).

Echols tendered a spreadsheet exhibit documenting all citations he has issued from 2012 through October 2020, along with copies of the citations themselves. (Doc.

57-3).  Over the examined period, Echols issued 364 citations to persons other than Reaves consisting of: 59 abandoned vehicle citations, 76 trash and debris citations, 154 overgrown grass and vegetation citations, 11 International Property Maintenance Code citations, 2 animal citations, and 34 condemnation notices.  (Doc. 57-14–18).   In addition to Reaves, Echols issued to two other residents ten or more citations each. (*Id.*)

## ANALYSIS

I. **Qualified Immunity Bars Reaves's "Class of One" and Supervisory Liability Claims**

Reaves's charge that Echols discriminatorily enforced Tuscumbia's ordinances so as to harass Reaves lodges a violation of the Equal Protection Clause.  Further, Reaves argues Underwood failed to redress the alleged harassment, which depicts a claim under the same clause for supervisory liability.  Defendants contend they enjoy qualified immunity from Reaves's claims as government officials.

"Qualified immunity shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Carruth v. Bentley*, 942 F.3d 1047, 1053 (11th Cir. 2019) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)) (internal quotations omitted).  To receive qualified immunity, a government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Carruth*, 942 F.3d at 1054 (internal citations and

quotations omitted).  After this showing, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.* (internal citations and quotations omitted).

Here, Echols and Underwood undisputedly acted within the scope of their discretionary authority as government officials for the City of Tuscumbia.  Reaves challenges Echols's enforcement of ordinances while acting as Building Inspector and Underwood's failure to redress Echols's conduct in his capacity as Tuscumbia's Mayor. Therefore, the burden falls upon Reaves to demonstrate that qualified immunity should not apply.

"To defeat qualified immunity, '(1) the relevant facts must set forth a violation of a constitutional right, and (2) the defendant must have violated a constitutional right that was clearly established at the time of defendant's conduct.'" *Id.* (quoting *Taylor v. Hughes*, 920 F.3d 729, 732 (11th Cir. 2019)).  Courts retain discretion to adjudicate one prong without addressing the other.  *Pearson*, 555 U.S. at 236.  Therefore, if an official does not violate the law, the inquiry ends.  *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1200 (11th Cir. 2007).  Furthermore, if an official's conduct does not clearly violate the law, the court must grant qualified immunity.  *Griffin*, 496 F.3d at 1200.

## A. Reaves Failed to Establish a "Class of One" Equal Protection Claim Because He Did Not Suffer Intentionally Different Treatment from Others Similarly Situated

Because the basis for Underwood's purported supervisory liability primarily rests upon Echols's conduct, the court will first analyze if Echols violated the Equal Protection clause.  The Equal Protection Clause provides that "[n]o State shall make or

enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. In *Village of Willowbrook v. Olech*, the Supreme Court characterized "class of one" Equal Protection claims as transgressions involving government officials intentionally and arbitrarily treating individuals differently from others similarly situated without a rational basis for doing so. 528 U.S. 562, 563–65 (2000) (per curiam) (recognizing an equal protection claim where a municipality refused to extend its municipal water supply without the plaintiff granting an easement twice as large as that required of other landowners); *see Allegheny Pittsburg Coal Co. v. County Commission of Webster County*, 488 U.S. 336, 344–46 (1989) (recognizing an equal protection claim where the government assessed plaintiff's property at roughly 8 to 35 times more than comparable neighboring property); *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445–46 (1923) (recognizing an equal protection claim where the state tax assessor intentionally and arbitrarily assessed the plaintiff's property at 100 percent of its true value and all other real estate in the county at 55 percent).

The Supreme Court further elaborated upon class of one claims in *Engquist v. Oregon Department of Agriculture*, whereby the court ruled such claims cannot encompass inherently discretionary government actions or decisions. 553 U.S. 591, 603–05 (2008) (holding the "class of one" equal protection theory does not apply in the public employment context). As an example, the Court discussed how a traffic officer's ticketing of one person for speeding, but not others who were also speeding, does not

form the basis for a "class of one" claim. *Id.* at 603–04.  The Court reasoned an officer must inherently use discretion in his decisionmaking because he or she cannot stop and ticket all speeders.  *Id.*  The Court found that allowing "an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action."  *Id.* at 604 ("It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized.").

Ultimately, to prevail on a class of one claim a plaintiff must show (1) the government intentionally treated him or her differently from others similarly situated and (2) no rational basis for the disparate treatment existed.  *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1263–64 (11th Cir. 2010); *Griffin*, 496 F.3d at 1202.  In cases involving qualified immunity, a plaintiff who fails to establish both elements of a "class of one" claim has not met the burden of showing that the defendant's conduct violated a constitutional right.  *Griffin*, 496 F.3d at 1202.  Because Reaves cannot sustain his claim on the first prong regarding intentional mistreatment, the court will not address the rational basis prong.

Reaves argues Echols discriminatorily enforced ordinances with the intention to harass him.  Specifically, Reaves argues that other similarly situated residents, including his next-door neighbor, can litter, grow grass excessively, and remedy ordinance violations in an untimely manner without receiving citations or fines from Echols.

First, Reaves successfully identifies other similarly situated residents. "Governmental decisionmaking challenged under a 'class of one' equal protection theory must be evaluated in light of the full variety of factors that an objectively reasonable governmental decisionmaker would have found relevant in making the challenged decision." *Griffin*, 496 F.3d at 1203. "Accordingly, when dissimilar governmental treatment is not the product of a one-dimensional decision—such as a standard easement or a tax assessed at a pre-set percentage of market value—the 'similarly situated' requirement will be more difficult to establish." *Id.* at 1203–04; *see Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1274 (11th Cir. 2008) (citing *Engquist*, 553 U.S. at 602) (explaining courts readily assess the government's departure from a clear standard, even for a single plaintiff). Thus, the court must apply the "similarly situated" requirement rigorously. *Griffin*, 496 F.3d at 1207.

In *Olech*, the Supreme Court found the plaintiff's situation similar to that of her neighbors because she requested a connection to the municipal water supply, and in return, the defendant required her to provide an easement twice as large as her neighbors. 528 U.S. at 563–65. Similarity existed between the plaintiff in *Olech* and her neighbors because the defendant, as the governmental decisionmaker, maintained a policy that did not involve the review of varied factors in its application. *Griffin*, 496 F.3d at 1203. The same pattern can be found in *Allegheny Pittsburgh Coal* and *Sioux City Bridge*, where the plaintiffs claimed that the government assessed taxes on the plaintiffs'

property at one rate while assessing all other property at a lower rate.  *See* 488 U.S. at 344; 260 U.S. at 445.

In each of these cases, the Court analyzed the "similarly situated" requirement "succinctly and at a high order of abstraction" because the challenged governmental decisions involved one-dimensional determinations.  *Griffin*, 496 F.3d at 1203. However, the Court did not conflate one-dimensional governmental decisions with simplicity.  *Id.*  Rather, the challenged decisions involved a single answer to a single question.  *Id.*  "In *Olech*, the only relevant factor was the size of the easement required in return for connection to the municipal water supply."  *Id.*  "In *Allegheny Pittsburgh Coal* and *Sioux City Bridge*, the only relevant factor was the market value of the property."  *Id.*

In this case, deciding to enforce generally applicable ordinances does not involve many factors.  The existence of Tuscumbia's clear ordinance standards renders Echols's pertinent enforcement decisions one-dimensional, like the government actors' decisions in *Olech*, *Allegheny Pittsburg Coal*, and *Sioux City Bridge*, because the only relevant factor involves residents' compliance with city ordinances.  As applicable to this case, Echols must determine whether a resident has more than three dogs, accumulated litter, or if grass exceeds twelve inches.[3]

---

[3] The applicable regulations provide as follows:

> "It shall be unlawful for any person to keep more than three (3) dogs in an enclosure, within the corporate limits of the city, where the perimeter of such enclosure is less than fifty (50) feet from the residence or dwelling of another person."

Tuscumbia, Ala., Ordinance Art. III, § 3-60(a) (1995)

Those determinations sharply contrast with rendering multi-dimensional decisions "involving varied decisionmaking criteria applied in a series of discretionary decisions made over an extended period of time." *Griffin*, 496 F.3d at 1203; *see Grider*, 618 F.3d at 1265 (finding that the occupancy calculation for a sky bar reflected a multi-dimensional decisionmaking process which involved various factors including the establishment's square footage, segments, emergency exist capacity, fire and sprinkler systems, and overall compliance); *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n,* 558 F.3d 1301, 1307 (11th Cir. 2009) (affirming dismissal of a "class of one" claim over regulatory commission's consideration of "a variegated set of factors," including aesthetics and comparison with industry standards, to determine whether a Toyota Prius qualified as a "luxury" limousine).

In addition, Echols's enforcement of ordinances – in particular the ordinances at issue in this case – does not necessarily require inherently discretionary decisionmaking. Echols's enforcement decisions differ from that of a traffic officer's, as described in *Engquist*, because Echols can cite most, if not all, residents who patently violate an ordinance pertaining to real property while a traffic officer cannot ticket all

---

"It shall be unlawful for any person owning, residing on or having charge or control of any premises or vacant lot within the city to allow any accumulation of litter or trash (except for collection purposes on regularly scheduled collection days and in a manner as authorized) on said premises or vacant lot or to allow weeds, grass, or vegetation to grow to a height exceeding twelve (12) inches."

Tuscumbia, Ala., Ordinance No. A-104, § 107 (1993).

people who are speeding.  These circumstances allow Echols to objectively and equally enforce ordinances without resorting to subjective, individualized decisionmaking, insofar as the ordinances at issue are concerned.  Thus, there exist other similarly-situated residents as Reaves, particularly those residents who violated the same ordinances as he did.

However, Reaves cannot show Echols intentionally treated him different than those similarly-situated residents.  Equal protection in the "class of one" context provides security against intentional and arbitrary discrimination, "whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Griffin*, 496 F.3d at 1208 (internal quotations omitted) (citing *Olech*, 528 U.S. at 564).  Reaves argues Echols intentionally harassed him by citing him ten times for various violations without citing other similarly situated residents for the same issues. The record portrays otherwise.

Since 2012, Echols has issued 364 citations to other similarly situated residents in Tuscumbia.  In addition to Reaves, Echols has issued to two other residents ten or more citations each.  Reaves's ten citations consist of: two abandoned vehicle citations, three trash and debris citations, one overgrown grass and vegetation citation, two International Property Maintenance Code citations, one animal citation, and one condemnation notice.  In comparison, Echols has issued 59 abandoned vehicles citations, 76 trash and debris citations, 154 overgrown grass and vegetation citations, 11 International Property Maintenance Code citations, 2 animal citations, and 34

condemnation notices to residents other than Reaves.  These facts completely differ from those in *Olech*, *Allegheny Pittsburgh Coal*, and *Sioux City Bridge*, where the intentional and arbitrary government action solely injured the plaintiffs in those cases, and thus, clearly depicted intentional different treatment.  The record here contrastingly exhibits a "class of some" – that is, violators of the applicable ordinances who Echols cited as he did Reaves – rather than a "class of one."

Reaves argues Echols does not fine other similarly-situated residents because their properties continuously fail to meet ordinance standards.  In essence, he maintains their properties would satisfy ordinance standards if Echols were citing the other residents for violations.  Reaves's argument reflects unwarranted assumptions, however, as other residents may choose not to remedy violations after receiving fines, or Echols has not yet fined the other residents.

Regardless, Reaves does not support his factual position in accordance with the Federal Rules of Civil Procedure, which state a party asserting a fact must support the assertion by citing to particular parts of the record or showing that material cited does not establish the absence of a genuine dispute.  Fed. R. Civ. P. Rule 56(c)(1).  Reaves does neither.  He does not offer record cites portraying that residents received citations but not fines for ordinance violations, or no citations at all.  Reaves only offers photographs depicting neighboring properties in violation of Tuscumbia's ordinances. Without the submission of admissible evidence depicting that other residents do not receive citations or fines, Reaves's argument falters.  His submission of just

photographs – without affidavits or declarations that the properties in the photographs did not receive citations from Echols – does not permit a reasonable fact-finder to return a verdict in his favor.

### B.     The Court Need Not Analyze the Clearly Established Prong

In cases involving qualified immunity, a plaintiff who fails to establish an element of a "class of one" claim has not met the burden of demonstrating that the defendant's conduct violated a constitutional right. *Griffin*, 496 F.3d at 1202. If the defendant did not violate a constitutional right, the qualified immunity analysis ends. *Id.* at 1200; *see Pearson*, 555 U.S. at 236 (holding courts retain discretion to adjudicate one prong without addressing the other). Because Reaves has failed to adequately allege a "class of one" equal protection violation, the court will not proceed to discuss the second prong of the qualified immunity analysis.

### C.     Reaves Fails to Establish a Supervisory Liability Claim Pursuant to 42 U.S.C. 1983

Reaves argues that Underwood's failure to redress Echols's alleged unconstitutional conduct forms the basis for supervisory liability under § 1983. When a plaintiff sues officials in their supervisory capacities, the claim may not rest upon the doctrine of respondeat superior or the officials' vicarious liability for their subordinates' actions. *Keith v. DeKalb Cty., Georgia*, 749 F.3d 1034, 1047 (11th Cir. 2014) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010)) (""[I]t is well established in this Circuit

that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.'"). Rather, "supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Reaves does not argue that Underwood participated directly in Echols's conduct. Rather, his arguments broaches the presence of a causal connection between Underwood's alleged failure to act and the class of one claim against Echols.  In a claim for supervisory liability, a plaintiff may establish a causal connection by demonstrating facts that "support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Valdes v. Crosby*, 450 F.3d 1231, 1237 (11th Cir. 2006) (citing *Cottone*, 326 F.3d at 1360).  In the Eleventh Circuit,

> [a] failure to stop claim under a theory of supervisory liability only requires that the supervisor (1) have the ability to prevent or discontinue a known constitutional violation by exercising his or her authority over the subordinate who commits the constitutional violation, and (2) subsequently fails to exercise that authority to stop it.

> *Keating v. City of Miami*, 598 F.3d 753, 765 (11th Cir. 2010).

"The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Braddy v. Florida Dep't of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998).

As the Mayor of Tuscumbia, Underwood exercises "general supervision and control of all other officers." Ala. Code § 11-43-81 (1989). Underwood therefore could cease Echols's conduct under the first prong of *Keating*. However, as discussed previously Echols did not commit a constitutional violation because he did not intentionally treat Reaves different than any other similarly situated resident. Because Echols did not violate the Constitution and Reaves failed to establish his "class of one" Equal Protection claim, Underwood could not have prevented or discontinued a "known constitutional violation." Furthermore, Underwood investigated Reaves's grievances concerning Echols's conduct. He found the citations that Echols issued justifiable and in furtherance of the safety and welfare of Tuscumbia's citizens. Thus, applying the supervisory liability standard extremely rigorously, there exists no liability for Underwood based on Echols's conduct.

## CONCLUSION

For the foregoing reasons, the court **DENIES** Defendants' Motion to Strike (Doc. 63) as **MOOT** and **DENIES** Defendants' other Motion to Strike (Doc. 67). In addition, the court **GRANTS** Defendants' Motion for Summary Judgment and **DENIES** Reaves's Motion for Summary Judgment.

**DONE** and **ORDERED** this 22nd day of October, 2021.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE

20